Present:  Carrico, C.J., Compton, Lacy, Hassell, Keenan, and
Koontz, JJ., and Poff, Senior Justice

HERBERT LEE, ET AL.
                         OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.   Record No. 961029                      February 28, 1997

COMMONWEALTH OF VIRGINIA

            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                     William R. Shelton, Judge


     In this appeal of a civil action for forfeiture

initiated pursuant to Code § 18.2-249, we consider whether

there is a "substantial connection" between the forfeited

items and illegal drug activity.

     The Commonwealth initiated this proceeding by filing an

information for forfeiture against Herbert Lee, Pamela

Denise Montague, $2,881 in United States currency, and a

1987 Nissan Pathfinder.  The Commonwealth alleged that the

currency and the vehicle were items "used in substantial

connection with or exchanged for, or traceable to an

exchange for . . . cocaine."  Lee and his sister, Montague,

contested the forfeiture and the trial court, sitting

without a jury, found that the currency and the vehicle were

used by Herbert Lee in substantial connection with the

possession of cocaine with the intent to distribute.  The

court entered a judgment approving forfeiture of the seized

items.  Lee and Montague appeal.

     We will review the evidence and all reasonable

inferences fairly deduced therefrom in the light most

favorable to the Commonwealth, the prevailing party below.

     On March 15, 1995, Chesterfield County detectives, Will

Morgan and Graham Powell, were involved in a surveillance operation and "an undercover" purchase of cocaine. About 9:45 p.m., Powell entered the parking lot of a restaurant in Chesterfield County where he met Chance Taylor, who was operating a white van. Powell gave Taylor a quantity of cash and asked Taylor for some cocaine. Taylor stated that he "had to go to meet his man and get the drugs and bring them back to [Powell]."

Subsequently, Lee, operating the Nissan Pathfinder, drove his vehicle into the parking lot and "pulled up nose-to-nose with the van." Lee alighted from the Pathfinder and met with Taylor. Then, Lee entered the Pathfinder and drove the vehicle from the parking lot to his apartment. Taylor gave the drugs to Powell. The drugs were tested and identified as cocaine.

On March 24, 1995, Powell made another purchase of cocaine from Taylor at the same parking lot. On this occasion, however, Powell used a pager to contact Taylor before the transaction. Taylor called Powell by telephone and informed him that Taylor would meet Powell in the parking lot in 20 minutes because Taylor "had to go to meet his man." When Taylor arrived at the parking lot, Taylor had already obtained the cocaine. Lee's Pathfinder was observed near the parking lot.

In May 1995, the police executed a search warrant of

Lee's apartment.  The police seized a bag containing powder residue, the Nissan Pathfinder, a pistol, and $2,881 in currency.  Lee admitted to the police officers that he sold "about eight to nine ounces a week of cocaine."  The police also found records detailing drug transactions.  The records of the drug transactions "correlate with the amounts [of cocaine] that were sold."  Lee also informed the police officers that even though the Nissan Pathfinder was registered in Montague's name, "it was his vehicle, [and] he had it in her name for insurance purposes only, because the insurance was so high with his driving being a young . . . unmarried male, under 25."

The defendants argue that the Commonwealth failed to present sufficient evidence at trial that the currency and Pathfinder were used in substantial connection with, or derived from, the illegal sale of the cocaine and, therefore, a judgment should not have been entered in favor of the Commonwealth.  The Commonwealth asserts that it presented evidence sufficient to permit the fact finder to find a substantial connection between the Pathfinder, the money, and the cocaine.

Code § 18.2-249, which permits the seizure of property used in connection with or derived from illegal drug transactions, states, in relevant part:

"A.  The following property shall be subject to lawful seizure by any officer charged with enforcing the provisions of this article:  (i) all

money . . . motor vehicles, and all other personal and real property of any kind or character, used in <u>substantial connection</u> with the illegal manufacture, sale or distribution of controlled substances or possession with intent to sell or distribute controlled substances . . . and (iii) all moneys or other property, real or personal, traceable to such an exchange, together with any interest or profits derived from the investment of such money or other property."

(Emphasis added.) Code § 19.2-386.10 provides that the Commonwealth has the burden of proving that the property is subject to forfeiture and that the "proof of all issues shall be by a preponderance of the evidence."

We have not had an occasion to discuss the phrase "substantial connection" in the context of Code § 18.2-249. However, federal appellate courts which have applied 21 U.S.C. § 881, a federal civil forfeiture statute, have held that a "substantial connection" must exist between the property subject to forfeiture and the illegal drug activity. <u>See</u> <u>United States</u> v. <u>Santoro</u>, 866 F.2d 1538, 1541-42 (4th Cir. 1989). These courts have also discussed the meaning of the phrase "substantial connection." For example, the United States Court of Appeals for the Fourth Circuit has stated:

"This standard is a common sense interpretation of the statute, which is consonant with the congressional intent that the instrumentalities of the drug trade be reached, while ensuring that property only fortuitously connected with drug trafficking be preserved."

<u>Id.</u> at 1542; <u>accord</u> <u>United States</u> v. <u>Two Tracts of Real</u>

-4-

Property, 998 F.2d 204, 211 (4th Cir. 1993); United States v. $95,945.18, U.S. Currency, 913 F.2d 1106, 1110 (4th Cir. 1990); United States v. Schifferli, 895 F.2d 987, 990 (4th Cir. 1990).  The "substantial connection" test requires that the property subject to forfeiture must have more than an incidental or fortuitous connection to the criminal activity.  Schifferli, 895 F.2d at 990.

We are of opinion that a common sense interpretation of the phrase "substantial connection" contained in Code § 18.2-249 is consistent with the General Assembly's intent to remove from drug traffickers the instrumentalities employed in the furtherance of the drug trade rather than property only incidentally or fortuitously associated with such criminal activity.  Applying this standard, we hold that the Commonwealth established by a preponderance of the evidence a substantial connection between Lee's drug activity and the Nissan Pathfinder and the cash.

According to Lee's statements to the detectives, he considered himself to be the "owner" of the vehicle that was registered in his sister's name.  The evidence reveals that Lee was a co-owner of the Pathfinder before 1994 and that his name appears on the bill of sale.  Lee admitted that he sold "eight to nine ounces" of cocaine each week.  On both occasions when Powell gave Taylor cash to purchase the cocaine, Taylor told Powell that Taylor "had to go to meet

his man and get the drugs." The fact finder was entitled to infer that Lee was "the man" who provided the drugs to Taylor and that, on March 15, 1995, Lee used the Pathfinder to transport himself and the drugs to the parking lot where the illegal transaction occurred.

As we have already mentioned, Lee admitted that the large amount of cash found in the apartment belonged to him and that he sold "eight to nine ounces" of cocaine weekly. A pistol, baggies, and records of drug transactions, which correlate to the quantity of drugs that Lee sold weekly, were also found in his apartment. This evidence is sufficient to establish a substantial connection between the money and Lee's illegal drug trafficking activities.

Accordingly, we will affirm the judgment of the trial court.

Affirmed.

JUSTICE KOONTZ, with whom JUSTICE KEENAN joins, concurring in part and dissenting in part.

I concur with the majority's determination that the Commonwealth established by a preponderance of the evidence the statutorily required substantial connection between Herbert Lee's illegal drug activity and his Nissan Pathfinder vehicle, thus permitting forfeiture of the vehicle. In my view, however, the Commonwealth failed to carry its burden of proving by a preponderance of the evidence that the $2,881 seized was subject to forfeiture. Code § 19.2-386.10(A). Accordingly, I

-6-

respectfully dissent.

The material facts are not in dispute. Lee admittedly sold "about eight to nine ounces a week of cocaine" and the records of drug transactions found by the police in his apartment are consistent with that admission. These facts provoke an intuitive suspicion that the $2,881 also found in Lee's apartment was related to Lee's drug dealing. However, the Commonwealth was required to prove that this cash was either actually "used in substantial connection with the . . . sale or distribution of controlled substances" or "traceable to such an exchange." Code § 18.2-249.

During the search of Lee's apartment, the police found $42 in the top right drawer of the dresser in Lee's bedroom and the remaining $2,839 in a lock box above the cabinets in his kitchen. The record does not establish that either location where cash was found had any direct relationship to the records of drug transactions or the other items frequently associated with drug transactions also found inside the apartment. Nor was any of the cash identified as having been used to make the undercover purchases of cocaine which led to the subsequent forfeiture action. Thus, the Commonwealth's evidence did not connect or trace, in any substantial way, either of the two sums of cash to the sale or distribution of controlled substances.

These sums are not so large as to necessarily exclude the possibility that Lee obtained them from legal activity.

Moreover, the Commonwealth produced no evidence to show that these sums are inconsistent with Lee's other sources of income as established by Lee and his witnesses. The trial court must determine the weight of the testimony and the credibility of the witnesses, but it "may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with facts in the record." Cheatham v. Gregory, 227 Va. 1, 4, 313 S.E.2d 368, 370 (1984).

The forfeiture of money gained from illegal drug sales is a valuable tool in the important and continuing effort to eliminate such activity, but the law is not well served if we permit a forfeiture of property merely suspected of having a substantial connection to the illegal transactions. See Code § 8.01-680; see also Hankerson v. Moody, 229 Va. 270, 274-75, 329 S.E.2d 791, 794 (1985) ("A court may not base its findings on a suspicion which is contrary to the undisputed positive testimony"). For these reasons, I would reverse the trial court's judgment of forfeiture of the cash seized from Lee.