COURT OF APPEALS OF VIRGINIA


Present:  Judges Felton, Kelsey and Senior Judge Willis
Argued at Richmond, Virginia


LOUDOUN COUNTY SCHOOL BOARD
                                          MEMORANDUM OPINION[*] BY
v.    Record No. 3106-02-2               JUDGE D. ARTHUR KELSEY
                                              JUNE 17, 2003
LYNN POSTEN KOSTECKA


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Michael L. Zimmerman (Siciliano, Ellis,
            Dyer & Boccarosse, on brief), for appellant.

            Dena Rosenkrantz, Staff Attorney (Virginia
            Education Association, on brief), for
            appellee.


     The Loudoun County School Board appeals a decision from the

Workers' Compensation Commission, claiming the commission erred

by finding that the school board must pay for a school bus

driver's medical treatment and surgery performed by an

unauthorized physician.  Because this case fits within a narrow

exception to the general rule that employers need not pay for

unauthorized medical care, we affirm.

                                I.

     On appeal, "we view the evidence in the light most

favorable to the prevailing party" before the commission.

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

<u>Clinchfield Coal Co. v. Reed</u>, 40 Va. App. 69, 72, 577 S.E.2d 538, 539 (2003); <u>Tomes v. James City (County Of) Fire</u>, 39 Va. App. 424, 429, 573 S.E.2d 312, 315 (2002).

After completing her bus route on January 25, 1996, Lynn P. Kostecka, a bus driver for the Loudoun County Schools, slipped and fell in the school's snow-covered parking lot. Kostecka immediately went to the emergency room of a local hospital where doctors treated her for head trauma, neck strain, and muscular strain. The injuries forced her to remain out of work, entitling her to receive both temporary total and temporary partial disability payments. In 1999, the commission awarded Kostecka medical benefits "for as long as necessary."

Kostecka visited a number of doctors for treatment of her injuries. She often complained of back pain and, despite seeing at least nine different doctors over a five-year period, her pain never subsided. On October 9, 2001, Kostecka suffered "leg pains and back pains" so severe that "she couldn't walk." She called her treating physician, Dr. James T. Gable, who was "gone for the afternoon" and his nurse "couldn't reach him." Kostecka explained her condition to Gable's nurse, who agreed that Kostecka should go to the emergency room. Kostecka went to a local hospital where the attending physician discharged her after examining her and giving her a shot for pain.

The next day, October 10, Kostecka returned to the emergency room after the pain had worsened from the day before.

-

There, the attending physician examined her and referred her to Dr. Thomas Schuler, an orthopedic surgeon. Schuler performed a closed MRI two days later, which offered new insight into the cause and extent of Kostecka's injury. Kostecka's previous doctors, Dr. Schuler testified, had relied on an open MRI scan of "very poor quality" which "led to her under treatment and missed diagnosis." Based on the results of the new MRI, Dr. Schuler concluded Kostecka's symptoms were directly related to her 1996 accident. Believing the situation required immediate surgical treatment, Dr. Schuler operated on Kostecka on October 17. Since the surgery, Dr. Schuler stated, Kostecka has "experienced marked improvement and better function."

The school board refused to pay Dr. Schuler's bill on the ground that his treatment was unauthorized. A deputy commissioner held that, while unauthorized, "the surgery and resultant treatment is causally related to the January 25, 1996 injury and that the claimant has established good cause for seeking the unauthorized treatment." On review, the commission upheld the deputy's decision. The commission found that Dr. Schuler's treatment met the "emergency" and "other good reasons" exceptions of Code § 65.2-603(C) to the general rule relieving employers from liability for unauthorized medical treatment.

-

II.

After an employee suffers a compensable injury, the employee must select a physician from the employer's authorized list of physicians.  See Code § 65.2-603(A)(1); H.J. Holz & Son, Inc. v. Dumas-Thayer, 37 Va. App. 645, 653, 561 S.E.2d 6, 10 (2002).  The employee "risks not being reimbursed," id. at 654, 561 S.E.2d at 10, for receiving treatment from any other source "unless referred by said physician, confronted with an emergency, or given permission by the employer and or its insurer or this Commission," Shenandoah Prods. Inc. v. Whitlock, 15 Va. App. 207, 210-11, 421 S.E.2d 483, 485 (1992) (quoting Breckenridge v. Marval Poultry Co., 228 Va. 191, 194, 319 S.E.2d 769, 770-71 (1984)); see also Georgia Pac. Corp. v. Dancy, 17 Va. App. 128, 134-35, 435 S.E.2d 898, 902 (1993).

Under a "rare exception" to this general rule, an employer must reimburse unauthorized treatment sought "in an emergency" during the relevant treatment period.  Code § 65.2-603(C); H.J. Holz & Son, Inc., 37 Va. App. at 653-54, 561 S.E.2d at 10.  An emergency arises when the employee reasonably believes "that his physical situation was such that he required emergency treatment to relieve his pain, whether real or imagined."  Payne v. Master Roofing & Siding, Inc., 1 Va. App. 413, 415, 339 S.E.2d 559, 560 (1986).  As long as the employee's "subjective symptoms were

-

related to the accidental injury," any treatment rendered in an emergency situation is compensable.  Id.

In this case, the commission found that the emergency care exception justified Kostecka's hospital visits on October 9 and 10, 2001.  On October 9, Kostecka, suffering such "severe leg pains and back pain" that she "couldn't walk," telephoned Dr. Gable, her treating physician.  Because Dr. Gable was unavailable, a nurse at his office referred Kostecka to the emergency room at a local hospital.  Kostecka returned to the same emergency room the next day when her pain worsened.  Faced with these facts, the commission did not err in finding that Kostecka's medical treatment on October 9 and 10 fell within the emergency exception of Code § 65.2-603(C).

Following the emergency room treatment, Kostecka continued to see Dr. Schuler, culminating in the October 17 surgery. Though recognizing that a claimant, following emergency treatment, "is not authorized to continue treatment, outside that of her treating physician," the commission found that Kostecka's evolving situation triggered the "other good reasons" exception of Code § 65.2-603(C).  This exception requires proof that (i) the employee "acted in good faith," (ii) the treatment provided by the employer was "inadequate," and (iii) "the alternative treatment was medically reasonable and necessary." H.J. Holz & Sons, Inc., 37 Va. App. at 654, 561 S.E.2d at 10; Whitlock, 15 Va. App. at 212, 421 S.E.2d at 486.

-

The commission's factual findings on the good faith issue are "conclusive and binding on this Court if supported by credible evidence." Blue Ridge Mkt. of Va. v. Patton, 39 Va. App. 592, 600, 575 S.E.2d 574, 578 (2003). The adequacy of the prior medical treatment, along with the reasonableness and necessity of the unauthorized treatment, present mixed questions of law and fact. H.J. Holz & Sons, Inc., 37 Va. App. at 655, 561 S.E.2d at 11.

On the first issue, we find that credible evidence supports the commission's finding that Kostecka acted in good faith in seeking treatment from Dr. Schuler. His medical care began when Kostecka visited the emergency room. Dr. Schuler promptly ordered a closed MRI scan, which led him to advise Kostecka that her prior physicians had misdiagnosed the severity of her condition and the need for surgery. The commission also found credible Kostecka's testimony about experiencing acute, unrelenting pain during this period of time. Together, these facts provide a fair basis for the commission's finding of good faith.

On the second issue, we agree with the commission's finding that Kostecka's "previous treatment was inadequate" and that a "misunderstanding about her condition led to her lack of improvement." Before Kostecka met with Dr. Schuler, at least nine other doctors had examined her. Despite her continuing problems, none of these physicians "was currently providing a treatment plan

-

to address the claimant's ongoing condition."  Noting that Kostecka's previous doctors had relied upon an open MRI scan of "very poor quality," Dr. Schuler performed a closed scan, which revealed in greater detail the extent of her injuries and the likely reason why she had "not been diagnosed and treated properly."

The school board points out that Kostecka refused in 1997 to submit to a closed MRI recommended by Dr. Ian Wattenmaker.  From that point forward, the school board reasons, the physicians treating Kostecka were justified in not continuing to recommend this procedure.  We disagree.  Kostecka submitted to two open MRIs in 1998.  These scans, Dr. Schuler opined, were of "very poor quality" and failed to "show the true detailed anatomy of her lumbar spine."  Nothing in the medical records between 1998 and 2001 suggests that any physician advised Kostecka of the diagnostic inadequacies of these open MRIs.  Nor does it appear that any physician, until Dr. Schuler, realized the need to address again with Kostecka the issue of obtaining a closed MRI given the limited value of her 1998 open MRI scans and her continuing, chronic symptoms of lower back pain.  These facts justify the commission's finding that Kostecka's prior treatment was inadequate for purposes of applying the "other good reasons" standard of Code § 65.2-603(C).

Finally, we agree with the commission that Dr. Schuler's treatment satisfies the requirement that it be medically

-

reasonable and necessary.  Necessary treatment includes any treatment from which an employee "realizes appreciable benefit and relief from said change." H.J. Holz & Sons, Inc., 37 Va. App. at 656, 561 S.E.2d at 12 (citation omitted).  Prior to the surgery, Kostecka found it difficult even to walk.  After the surgery, Kostecka "markedly improved her symptoms in the short period" and was "functioning much better."  The school board presented no evidence challenging the necessity for, or medical efficacy of, Kostecka's surgery.

### III.

We affirm the commission, finding no error in its application of the legal standards required by the "emergency" and "other good reasons" exceptions of Code § 65.2-603(C) or in its findings of fact underlying the application of these standards.[1]

Affirmed.

---

[1] In its brief on appeal, the school board also argues that Kostecka's temporary total disability benefits should have been suspended while she prepared for, and recuperated from, voluntary eye surgery unrelated to her compensable injury.  As the school board conceded at oral argument, however, this issue was not addressed in the school board's request for full commission review.  See 16 Va. Admin. Code § 30-50-40(1), Commission Rule 3.1.  Thus, it cannot now be reviewed on appeal to this Court.  See Rule 5A:18.

-